IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Trevor Antwon Johnson | Crim. No. 4:04-cr-00582-TLW<br><br>**Order** |

This matter is before the Court on Defendant Trevor Antwon Johnson's motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 227. For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

On February 17, 2005, and February 1, 2006, respectively Johnson pled guilty to two counts of carjacking conspiracy in violation of 18 U.S.C. §§ 2119(1) and 2. ECF Nos. 2, 70, 71, 108, 109, 144. On May 9, 2006, a sentencing hearing was held in which Defendant was sentenced to a term of imprisonment of 312 months (180 months as to Count 1 and 132 months, consecutive, as to Count 3), to be followed by 3 years of supervised release. ECF Nos. 120, 129. According to BOP records, he is scheduled to be released from custody on December 18, 2026.

## APPLICABLE LAW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides, in relevant part, as follows:

[T]he court, . . . upon motion of the defendant . . . , may reduce the term

1

> of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But prior to the passage of the First Step Act, compassionate release motions could only be filed by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons

warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

In Defendant's motion, he seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the dangers posed by the COVID-19 pandemic, his medical conditions which make him particularly vulnerable to becoming seriously ill from COVID-19, and his alleged rehabilitation. ECF No. 227. He asserts that he suffers from testicular cancer and kidney disease, which are included on the CDC's list of conditions that can make you more likely to get severely ill from COVID-19. *Id*. Defendant submitted medical records that verify his testicular cancer diagnosis, and also indicates Defendant has "fully recovered from" the treatment. ECF No. 227-3. Specific medical documentation has not been submitted in relation to kidney disease.

The Government opposes his motion, arguing that (1) Defendant no longer presents an "extraordinary and compelling reason" that could warrant release because he was offered a vaccine[1] and refused it; (2) that Defendant still poses a significant danger to the safety of the community and the § 3553(a) factors weigh against release.

First, the Government concedes that Defendant's diagnosis of testicular cancer is "clearly identified by the CDC" as a condition that "can make you more likely to get severely ill from COVID-19." ECF No. 231 at 12. The Government contends, however, that Defendant no longer presents an "extraordinary and compelling reason" that

---

[1] The Government includes an exhibit dated July 26, 2021, documenting that BOP offered the Defendant the COVID-19 Moderna vaccine. *See* ECF No. 231-1.

3

could warrant release because he was offered a vaccine on March 3, 2021 and declined it. *Id.*

Next, the Government outlines Johnson's offense conduct: "participat[ed] in two violent carjackings where he and other codefendants held victims at gunpoint, threatened them, demanded money, bound the victims' ankles and wrists with duct tape, wrapped tape around the victims' mouth and eyes, then forced one victim into the trunk and the other victim onto the rear floorboard of the car." ECF No. 231 at 5. The Government mentions that at one point, "a carjacker put a gun to one victim's head and said: 'Don't move, or I'll blow your head off.'" *Id.*; PSR at ¶ 16. Additionally, the Government includes details from the second carjacking, when "one of the perpetrators confronted a female driver at gunpoint, ordered her out of the car, bound her ankles and wrists with duct tape, wrapped tape around her head as a blindfold, demanded money, then forced her into the rear seat of the car." *Id.*

The Government also notes that Johnson's criminal history is substantial, including convictions for burglary, multiple counts of possession of a stolen vehicle, and failure to stop for a blue light, as well as his lengthy inmate disciplinary history. *Id.* at 6. "He committed the instant offense while on state probation." *Id.* at 6; PSR ¶¶ 75, 78. While incarcerated on the instant offense, the Government outlines his disciplinary history, which includes: fighting with another person, threatening bodily harm, assaulting without serious injury, two instances of possessing a dangerous weapon, destroying property over $100, possessing unauthorized item, possessing drugs/alcohol, possessing intoxicants, destroy/dispose item-search, disruptive

4

conduct-greatest, ten instances of refusing to obey an order, two instances of refusing work assignment, mail abuse-criminal, phone abuse, being insolent to staff member, interfering with taking count, being in unauthorized area, and being unsanitary or untidy. *Id.*

In considering whether to reduce Defendant's sentence, the Court has carefully reviewed the Presentence Investigation Report (PSR) and has considered the statutory penalties, the Guidelines range, applicable caselaw and statutory law, all of the § 3553(a) factors and the balancing of those factors, and his post-sentencing conduct.[2] In light of those considerations and the health issues, the Court accepts the Defendant's position that he has shown "extraordinary and compelling" circumstances. However, the Court concludes he fails to establish that the § 3553(a) factors weigh in favor of release. The Court's reasons for reaching this conclusion include (1) Defendant's medical records that indicate treatment and care, (2) the seriousness and violent nature of the instant federal offenses, and (3) his criminal history that involves additional significant conduct and demonstrates a continued disrespect for the law and safety of others.

In balancing and analyzing the § 3553(a) factors, the Court has considered the compassionate release issues not at issue at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring). This Court notes and has considered the health

---

[2] The Court has considered in its analysis each of the issues raised in Defendant's filings, including (1) his medical conditions independently and in light of COVID-19; (2) the First Step Act's elimination of § 924(c) "stacking"; (3) the way that the BOP is managing the pandemic and Defendant's health conditions; (4) his growth and rehabilitation efforts while incarcerated; (5) his disciplinary issues while incarcerated; (6) the portion of his sentence served; and (7) his release plan, including living arrangements and medical care.

5

conditions Defendant faces, and the risk of COVID in light of his condition and incarceration. Those issues, and the current circumstances of Defendant's incarceration, have been considered in applying the following § 3553(a) factors.

In conjunction with the § 3553(a) factors, it is appropriate to highlight the facts of the instant offense and the Defendant's criminal history. Prior to the Defendant's present federal convictions for which is currently incarcerated, he was previously convicted of additional serious conduct, including: burglary in 1997 at age 12, possession of a stolen vehicle in 1998 at age 13, possession of a stolen vehicle in 2001 at age 16, and failure to stop for a blue light in 2003. PSR at ¶¶ 75, 78.

The Court takes notice that while incarcerated for the instant offense, Defendant has accrued 30 disciplinary infractions—including fighting with another person, threatening bodily harm, assaulting without serious injury, and possession of a dangerous weapon on two occasions. This conduct indicates a lack of rehabilitation while incarcerated and weighs strongly against release.

The Court also concludes that "the nature and circumstances of the offense" weigh heavily against release. The Defendant committed the instant federal offense while on state probation for his 2003 convictions for failure to stop for a blue light and possession of a stolen motor vehicle charges. PSR at ¶ 75. The full facts of the instant offense are outlined in Paragraphs 9 – 31 of the PSR. The Court will not restate all the facts here but will highlight the significant details. The PSR states that Defendant and others conspired together to commit two violent carjackings involving three victims. PSR ¶¶ at 10-30, 35-41. During the first carjacking, which

occurred in Myrtle Beach, South Carolina, Defendant and others held two young victims vacationing with their parents at gunpoint, threatened them, demanded money, bound the victims' ankles and wrists with duct tape, wrapped duct tape around the victims' mouths and eyes, and forced them into the trunk of a vehicle. *Id.* at ¶¶ 14-18, 35-36. Defendant and others threatened to shoot a victim if he was not quiet when heard moving around in the trunk. *Id.* at ¶ 17. Defendant and others committed the second carjacking later that night when they approached a female driver sitting in her driveway at home where she lived with her parents, at gunpoint. *Id.* She was ordered out of her car, her ankles and wrists were bound with duct tape, and tape was wrapped around her eyes and mouth. *Id.* The Defendant and others demanded money and forced her into the backseat of the car. PSR ¶¶ at 21-22, 37-38. She had just returned home after working. *Id.* Defendant and coconspirators drove all three victims from Myrtle Beach towards Columbia, eventually "dumping" all three in a remote area in Florence County. *Id.* at ¶¶ 23-24, 38-40. Shots were fired in the air as they left the three victims on the roadside in Florence. *Id.*

In sum, Defendant has committed serious offenses since he was 12 years old. The instant offense—two carjackings—are heinous crimes which involved holding victims at gunpoint, binding their ankles, wrists, mouths, and eyes with duct tape, forcing them into the trunk and floorboard of the vehicle, robbing them, and eventually leaving them on the side of the road in a remote area after firing gunshots in the air. His conduct demonstrates his disrespect for the law and his propensity to engage in criminal conduct. A review of the instant offense and Defendant's criminal

7

history leads the Court to conclude that § 3553(a)(2)—the need for the sentence imposed—weighs against release. Defendant's sentence was and is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes of the defendant.

As to §§ 3553(a)(3)-(4)—the Court considered the kinds of sentences available and the sentencing range established for the offense—the Court notes that Defendant was sentenced within the Guidelines range. Defendant is in the criminal history category of V.[3] PSR at ¶¶ 77-80. His Guideline range for the two counts of carjacking conspiracy was 262 to 327 months' imprisonment. *Id.* at ¶ 97. The Court sentenced Defendant to a total of 312 months of imprisonment (180 months as to Count 1 and 132 months, consecutive, as to Count 3) followed by 3 years of supervised release. ECF Nos. 120, 129. Defendant filed an appeal and the Fourth Circuit affirmed the Court's judgment. *See* ECF No. 147. Presently, Defendant has approximately 58 months of his sentence remaining. Therefore, the Court concludes that these factors also weigh against release.

As stated above, in light of the violent and serious nature of the instant offense and Defendant's criminal history, the sentence imposed was necessary to reflect the seriousness of the offense and to protect the public from further crimes of Defendant. The Court's § 3553(a) analysis counsels that release is not warranted. The Court

---

[3] Defendant's total number of criminal history points is 10, which would place him in a criminal history category of V even if his criminal history points were recalculated under the current version of the Sentencing Guidelines.

concludes it is appropriate to require the Defendant to serve the remainder of the sentence imposed. In sum, the Defendant was a violent offender who poses a threat to the public if released.

In light of the seriousness of the instant offense, and Defendant's criminal history, the Court finds that the § 3553(a) factors weigh against release. Accordingly, his compassionate release motion, ECF No. 227, is **DENIED**.[4] [5]

**IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

April 28, 2022
Columbia, South Carolina

---

[4] To the extent he seeks an order directing the BOP to grant him an early release to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), the Court does not have discretion to issue such an order. *See, e.g.*, *United States v. Hendrix*, No. 1:10-cr-00067-MR-WCM-2, 2020 WL 2319698, at *1 (W.D.N.C. May 11, 2020) ("The discretion to release a prisoner to home confinement lies solely with the Attorney General. The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this." (citations omitted)).

[5] The Court has given careful and full consideration to the Fourth Circuit's recent per curiam opinion in *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021), including the concurring opinions, and has applied those standards in considering this motion. It has also reviewed the Fourth Circuit's recent decision in *United States v. High*, 2021 WL 1823280 (4th Cir. May 7, 2021) and has similarly applied those standards.